IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00441-WJM-MJW

JULIA MARK,

Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY and
FEDEX OFFICE AND PRINT SERVICES, INC.,

Defendant.

---

**REPORT AND RECOMMENDATION ON
THE PARTIES' JOINT MOTION FOR DETERMINATION
(DOCKET NO. 38)**

---

**Michael J. Watanabe**
United States Magistrate Judge

This case is before the Court on Plaintiff Julia Mark's ("Mark") Complaint (Docket No. 1) to recover short term disability ("STD") benefits under section 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Judge William J. Martinez referred the parties' Joint Motion for Determination (Docket No. 38) to the undersigned Magistrate Judge for a recommended disposition. (Docket No. 34.) The Court has reviewed the Administrative Record ("AR") (Docket No. 25), Mark's Opening Brief (Docket No. 29), Defendants Aetna Life Insurance Company ("Aetna") and FedEx Office and Print Services, Inc.'s ("FedEx Office") (collectively "Defendants") Response Brief (Docket No. 33), and Mark's Reply Brief. (Docket No. 37.) The Court has taken judicial notice of the Court's file, and

1

considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. BACKGROUND

### a. Procedural History

Mark was employed by FedEx Office and sought medical benefits under the FedEx Office and Print Services, Inc. Short Term Disability Plan (the "Plan"). The Plan is self-funded by FedEx Office. (AR 8.) Aetna acts as the Claims Administrator under the Plan. (AR 4.) FedEx Office has delegated to Aetna the authority "to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to matters properly brought before it . . . including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan." *(*AR 31.) Aetna's determination "shall be final, subject only to a determination by a court of competent jurisdiction that the Claims Administrator's decision was arbitrary and capricious." (AR 32.)

Mark sustained injuries to her mid-back, neck, right ankle, and, most significantly, left knee when she fell on a sidewalk. (AR 397.)[1] She was placed on leave and her last day of work was March 10, 2016. (AR 200.) As a production specialist, Mark's job duties included processing large orders, operating and maintaining equipment, and providing customer service. (AR 223.) The job functions required the ability to stand the entire

---

[1] Plaintiff is also profoundly hearing impaired, although she does not argue that she was unable to work at FedEx Office based on this impairment. (Docket No. 29 at 2 n. 2.)

shift, move and lift 55 pounds, and consistently bend/twist at the waist and knees. (*Id.*)[2]

Given her injuries and her job requirements, Mark filed a claim for STD benefits on May 24, 2016. (AR 200-01, 782-85.) On May 31, 2016, Aetna determined Mark was disabled under the Plan and approved STD benefits from March 11, 2016 through May 26, 2016. (AR 230-31.)

On June 8, 2016, Aetna informed Mark it was no longer approving her STD benefits as of May 27, 2016 because it determined "that there are insufficient clinical exam findings to support your inability to perform essential functions of your own occupation." (AR 245-46.) Thereafter, Aetna requested, and Mark supplied, additional medical records, including physical therapy notes. Aetna also requested "diagnostic test results" and "supporting clinical information" from Mark and her treating physician. Mark eventually appealed the denial of STD benefits on August 30, 2016. (AR 312-47.) Aetna denied her appeal on November 16, 2016, again finding that "there are no significant objective findings to substantiate that a functional impairment exists that would render you unable to perform your heavy job duties as a Production Specialist effective 05/27/16." (AR 391-92.) Mark then filed the Complaint at issue on February 17, 2017. (Docket No. 1.)

**b. The Relevant Plan Provisions**

There are essentially two Plan provisions at issue here. First, the Plan provides that "Disability or Disabled"

> shall mean a sickness, illness, or injury that (1) limits a Covered Team Member from performing the material and substantial duties of his or her regular occupation due to the

---

[2] In her claim for benefits, Mark indicated that she was required to lift up to 100 pounds. (AR 784.)

> sickness, illness, or injury; and (2) results in the Covered Team Member having a 20% or more loss in Weekly Earnings due to the same sickness, illness, or injury. A Covered Team Member's regular occupation is the occupation that the Covered Team Member routinely performed at the time the Covered Team Member's Disability began. However, a Covered Team Member shall not be deemed to be Disabled or under a Disability unless the Team Member is, during the entire period of Disability, under the direct regular care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms. A Covered Team Member will be required to provide proof of continuing Disability within 30 days of any request by the Claims Administrator or Disability Benefits will be terminated. In the absence of significant objective findings, conflicts with managers, shifts and/or work place setting will not be factors supporting disability under the Plan.

(AR 5-6.)

Second, the "Proof of Disability" provision states:

> No benefits shall be paid under the Plan unless and until the Claims Administrator has received the Covered Team Member's application for benefits and information sufficient for the Claims Administrator to determine pursuant to the terms of the Plan that a Disability exists. Such information may, as the Claims Administrator shall determine, consist of a certification from the Team Member's attending Practitioner in the form prescribed by the Claims Administrator, information in the form of personal references, narrative reports, pathology reports, x-rays and any other medical records or other information as may be required by the Claims Administrator. . . . The burden of proof for establishing a disability is on the Covered Team Member.

(AR 24-5.)

4

### c. Summary of Medical Evidence

Mark was treated for her injuries by her primary care physician, Dr. Teng Chang, beginning on March 16, 2016. (AR 221.)[3] Her most significant injury was to her left knee. She followed up with Dr. Chang several times in 2016, both before and after her STD claim was denied on June 8, 2016. The AR includes notes from visits on March 16, March 31, April 28, May 26, June 30, July 14, and September 13, 2016. (AR 217-21, 242, 258-9, and 451.)[4] Dr. Chang provided Aetna with several Attending Provider Statements ("APS"), in which he stated that Mark cannot bend, twist, or lift, as it aggravates her knee; that she cannot work more than six hours per day, five days per week; that she has a 10 pound lifting restriction and cannot push or pull anything more than 10 pounds; and that she must be able to sit, ice, and elevate her knee. (AR 221, 242, and 260.) Dr. Chang stated that her recovery and improvement times were unknown, but noted in the last APS, dated July 19, 2016, that Mark had recently had improved in the past month. (AR at 260.) He also wrote narrative reports concerning Mark on July 14, August 12, and August 18, 2016, which reiterated the above restrictions. (AR 252, 272, and 283.)

Mark also underwent physical therapy, and had 44 visits between her fall and October 3, 2016. (AR 388.) On July 20, 2016, after 26 visits, Mark's physical therapist provided Aetna with an evaluation that stated that Mark had "significant" swelling above the left knee, 95 percent range of motion in both knees, and subjective knee pain of

---

[3] Mark apparently saw Dr. Chang for a physical examination on March 11, 2016. (AR 202.) However, the Court cannot locate in the AR the office notes from that visit; the first notes are from March 16, 2016. (AR 217.)

[4] The AR contains several duplicate copies of the medical records. The Court will attempt to cite only to the first to appear chronologically, for clarity's sake.

2/10. (AR 268.) The physical therapist's assessment was that Mark had a "multi regional mechanical dysfunction secondary to a fall," and under "Joint Mobility," he noted the following: "Hypomobility at T8-T10 and T11-T12, thoracolumbar junction restriction, stiff hips, stiff L4-L5, L talocrural joint, L sub talar joint and midfoot stiffness." (*Id.*) The physical therapist also performed three "functional movement screens" on July 20, August 8, and September 26, 2016. (AR 273-74, 278, and 376.) The notes connected with the August 8 screen indicate that Mark had issues with her balance, although Mark reported to the physical therapist that her "[k]nee has not given her much pain." (AR 273-74.) Mark's physical therapy notes indicate that her condition generally improved through the summer of 2016. (AR 288-305.) In September 2016, although significant left knee swelling was documented, the notes indicate that Mark's "pain and ROM has drastically improved." (AR 372.)

On October 18, 2016, Dr. William C. Andrews reviewed Mark's records and concluded that that "there is no significant objective clinical documentation that reveals a functional impairment that would preclude the claimant from performing the essential duties of her own occupation." (AR 388.) Dr. Andrews went on:

> There are simply no objective findings presented on any examination in this record. There are no radiographic findings. There is nothing to support anything either than a painful knee. No diagnosis is supportable in total absence of any physical examination findings or radiographic findings. There were also complaints of some back pain, but I did not see any radiographic examination. On radiographic evaluation, I did not see any findings on examination to support significant findings relative to the back pain. Basically, Dr. Chang's notes have no physical examination findings on them. The physical therapy notes do not have much more.

6

> I did not see any sign of any recent medications relative to this injury.

(*Id.*)

### d. Denial of Appeal

On November 16, 2016, Aetna affirmed the denial of Mark's STD benefits. (AR 390-92.) The Aetna Appeal Review Committee (the "Committee"), after summarizing the medical records, found that "[a]lthough you had complaints of pain in your left knee, mid-back, neck and right ankle pain and were placed on restrictions through 11/20/16, no significant correlating exam findings were provided." (AR 392.) Because "[t]here was no documentation of any diagnostic test results or significant measured deficits in range of motion or strength, knee instability, use of assistive devices or neurological deficits[,] . . . the clinical data fails to support a continued functional impairment effective 05/27/16." (*Id.*) The Committee concluded that the "Plan is specific regarding the requirement of significant objective findings to substantiate eligibility for disability benefits and this requirement was not met in your case." (*Id.*)

## II. LEGAL STANDARD

Judge Martinez has set forth the standard of review in an ERISA action as follows:

> ERISA governs employee benefit plans, including disability benefit plans. 29 U.S.C. §§ 1101 *et seq.* "When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan.*"* *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; alterations

7

> incorporated). Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws. 29 U.S.C. § 1144(a).
>
> The Supreme Court has held that "a denial of benefits challenged under [the civil enforcement provision of ERISA, 29 U.S.C.] § 1132(a)(1)(B) [,] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In such a situation, the Court determines whether the denial of benefits was arbitrary and capricious. *Id.*
>
> Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or the best one; the decision will be upheld provided that it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

*Lamont v. Connecticut Gen. Life Ins. Co.*, 215 F. Supp. 3d 1070, 1077 (D. Colo. 2016).

The Plan gives Aetna the discretionary authority to determine eligibility for benefits. As such, the Court applies an "arbitrary and capricious" standard of review, and "the decision will be upheld so long as it is predicated on a reasoned basis" or is supported by substantial evidence. *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

### III. ANALYSIS

Mark argues that Defendants' denial of her STD claim was arbitrary and capricious and should be overturned. Mark claims that Defendants (1) ignored the subjective and objective medical evidence that she presented; (2) improperly

8

disregarded her treating physician's opinions and her complaints of pain; and (3) failed to perform an in-person examination. She requests an order awarding her the full STD benefits available under Defendants' policy, together with reasonable attorney fees, costs, and pre-judgment interest, as well as an order directing Defendants to open and process her previously rejected long term disability application. Defendants maintain that there is substantial evidence to support the decision that Mark did not meet the definition of disability under the Plan.

In determining whether Mark has met her burden of demonstrating that Defendants' denial of STD benefits effective May 27, 2016 was arbitrary and capricious; i.e., whether they lacked a reasonable basis or were not supported by substantial evidence, *see McClenahan v. Metro. Life Ins. Co.,* 416 F. App'x 693, 697 (10th Cir. 2011) (unpublished), the Court will consider whether a "reasonable mind might accept [it] as adequate to support the conclusion reached by the [decisionmaker]." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (citation omitted). While the decisionmaker must take into account "whatever in the record fairly detracts from" its determination, substantial evidence requires "more than a scintilla but less than a preponderance." *Id.* (citation omitted). Further, the Court notes that Defendants were not required to "accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Court will not weigh or evaluate the medical evidence in record. *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 726

n. 4 (10th Cir. 2012) (unpublished). Thus, Mark must establish that there was more than a mere disagreement among physicians regarding appropriate treatment.

The Court now turns to the medical evidence submitted to Aetna by Mark and her treatment providers. Mark concedes that it is not unreasonable for Defendants to require objective evidence of disability. Instead, she argues that Dr. Chang and the physical therapist documented "significant" knee swelling, reports of severe pain, hypomobility of the knee and spine, antalgic gait, and decreased range of motion and loss of strength, which are all objective findings that were ignored by the Defendants. Mark also points to the functional movement screens, which confirmed, among other things, an extreme lack of balance. Therefore, Defendants' prioritizing clinical exams and x-rays over other objective evidence, such as Mark's doctor's and therapist's observations, was an "overly restrictive" application of the Plan and was arbitrary and capricious under ERISA.

Mark also notes that Aetna had concluded that she was disabled as defined by the Plan from March 11, 2016 to May 26, 2016, based only on the records of Dr. Chang. Dr. Chang's records are substantially similar both before and after May 27, 2016, yet Mark argues that Defendants do not explain what changed in terms of "clinical data" after that point, especially given that more medical evidence was subsequently provided to substantiate Mark's claims.

The Court agrees with Plaintiff that Dr. Andrews goes too far when he writes that "[t]here are simply no objective findings presented on any examination in this record." (AR 388.) Swelling, for example, when it is actually observed by medical personnel, as it

10

was here, is objective data, as is an observed limp, or decreased range of motion. Dr. Andrews does not mention any of these objective findings.

However, Dr. Andrews did not make the final determination whether Mark was entitled to STD benefits. Rather, Aetna was tasked to make this determination, and the Committee's November 16, 2016 Appeal Determination does contain explicit references to the findings regarding swelling, hypomobility, antalgic gait, range of motion, and multilevel thoracic mechanical dysfunction. (AR 391-92.) While the Committee does not go into great detail analyzing these conditions, it does not merely recite the medical data, as Mark argues. In several places, the Committee notes the lack of "measured findings" to support the medical exams. Thus, for example, the Committee acknowledged that on October 3, 2016, Mark was "assessed to be weaker on the left side," but points out that "the specific body part or measured findings were not provided." (AR 392.) Moreover, the Appeals Determination accurately reflects that Mark's medical records show a gradual improvement in her conditions through the summer and early fall of 2016, with some documented setbacks. This undermines Mark's claim that she "consistently reported pain at every doctor and physical therapy visit." For instance, on May 26, 2016, she rated her knee pain at 3/10. (AR 220) A month later, she reported knee pain of 2/10. (AR 259.) July 2016 notes indicate that her "knee pain is now good" and "knee pain continues to decrease." (AR 258.) On August 8, 2016, a functional movement screen was performed where Mark reported that her "[k]nee has not given her much pain, just stiffness after prolonged activity." (AR 306.) Even the September 13, 2016 physical therapy report that lists all of Mark's objective

findings (slightly antalgic gait, hypomobility, significant swelling above the left knee, etc.) contains Mark's subjective report that her pain and range of motion has "drastically improved." (AR 372.)

While the medical records seem to indicate that Mark's condition was improving, Dr. Chang's work restrictions remained essentially unchanged. Thus, Aetna unsurprisingly requested updated records from Dr. Chang on multiple occasions. (AR 236, 264 and 279.) Each of these requests asked for "diagnostic test results." (*Id.*) Each stated that "[t]he information requested is essential to consider 'authorization of short term disability benefits' for the patient. No benefits (wage replacement) will be authorized without this information." (*Id.*) Dr. Chang never performed any diagnostic tests or, if he did, never provided Aetna with the results. Thus, Mark's argument that Defendants offer no explanation for why Dr. Chang's opinions, "based as they were on multiple exams and obvious objective findings, were disregarded," is unavailing. Dr. Chang's opinions were disregarded because he did not provide any clinical or diagnostic test results to substantiate them. Mark herself was informed that Aetna had "not received objective clinical information to support your disability . . . Please inform your Primary Care Provider or the Physical Therapist that they can fax *supporting clinical information* they receive at any time. . . . They do not have to wait for my request." (AR 281) (emphasis added). Mark could have asked Dr. Chang to perform diagnostic tests, or gone to a different doctor to have them done, and supplied those results to Aetna.

However, the Court must bear in mind that Mark sought disability benefits and pursued her appeal without representation. The AR clearly indicates that she was trying her best to cooperate with Aetna and provide the requested documentation. In truth, Dr. Chang dropped the ball on his end, a fact that Aetna knew or should have known. "An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 808 (10th Cir. 2004). Aetna had a mechanism to obtain that additional evidence: an independent medical exam. While Defendants are technically correct that the Plan does not mandate an in-person medical examination (AR 24), Aetna could not "shut [its] eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Id.* at 807. Given the obvious deficiencies of Dr. Andrew's record review concerning Mark's objective conditions, coupled with Dr. Chang's inexplicable inability to gather clinical data, an independent medical exam was warranted. *See Mason v. Reliance Standard Life Ins. Co.,* No. 14-CV-01415-MSK-NYW, 2015 WL 5719648 (D. Colo. Sept. 30, 2015) (unpublished). Aetna's failure to conduct one, under these circumstances, was arbitrary and capricious.

Moreover, while the Appeals Determination references the functional movement screens, it fails to address how these objective test results affected Mark's ability to perform her job duties. For instance, the August 8, 2018 functional movement screen indicates that Mark had an "extreme" lack of balance, lacked core strength, and had stability issues. (AR 273-74.) The Court can easily see these conditions impairing

13

Mark's ability to "move and lift 55 pounds," consistently bend/twist at the waist and knees, and operate, clean, and repair "binding and other auxiliary equipment," all of which are indisputably part of her job responsibilities. However, Aetna failed to analyze this information. Instead, Defendants now argue that the functional movement screens offer no context for the resulting scores or explain how the test results implicate Mark's ability to perform her job duties. If Aetna had trouble interpreting the screens of placing them in context, it could and should have asked for additional or clarifying information. *See Gaither*, 394 F.3d at 807 ("'*[I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.*'" (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (further citations omitted) (emphasis in original)). Aetna failed to do so, and thus acted arbitrarily and capriciously.

## IV. RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants' denial of Mark's STD claim be **REVERSED**, and that the case be **REMANDED** with instructions to fully consider the entire record and to request and obtain additional documentation if necessary to determine Mark's eligibility for short term disability benefits, consistent with this Recommendation and any other orders Judge Martinez deems appropriate.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions,** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:    April 25, 2018                              */s/ Michael J. Watanabe*
          Denver, Colorado                            Michael J. Watanabe
                                                      United States Magistrate Judge