IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0441-WJM-NRN

JULIA MARK,

    Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY and
FEDEX OFFICE AND PRINT SERVICES, INC.,

    Defendants.

## ORDER VACATING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS

In this case brought pursuant to 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Julia Mark ("Mark") challenges the decision of Defendant Aetna Life Insurance Company ("Aetna") to terminate Mark's short-term disability benefits. After completion of briefing, the parties filed a Joint Motion for Determination. (ECF No. 38.) The Court referred the matter to United States Magistrate Judge Michael J. Watanabe (since retired) for a report and recommendation. (ECF No. 43.)

Judge Watanabe issued his report and recommendation on April 25, 2018 ("Recommendation"), recommending that Aetna's decision be vacated and remanded for further consideration. (ECF No. 44.) Aetna timely objected (ECF No. 45) and Mark responded to that objection (ECF No. 46). The Court has now reviewed the Recommendation, Aetna's objection, Mark's response, as well as the parties' pre-

Recommendation briefing (ECF Nos. 29, 33, 37) and many portions of the Administrative Record (ECF No. 25, cited below as "R.").

For the reasons explained below, the Court adopts the Judge Watanabe's recommended disposition, although for reasons somewhat different than those expressed by Judge Watanabe. Aetna's termination of benefits is therefore vacated and remanded for further consideration.

## I. RULE 72(b) STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. An objection is proper if it is filed within fourteen days of the magistrate judge's recommendations and is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (internal quotation marks omitted).

Aetna timely objected to the Recommendation with sufficient specificity. (*See* ECF No. 45.) Accordingly, the Court reviews this matter *de novo*.

## II. BACKGROUND

No party has objected to Judge Watanabe's factual summary (ECF No. 44 at 2–7), and so the Court adopts it as if set forth herein. The Court repeats the following to provide context for its resolution.

Mark fell on a sidewalk and injured her left knee, as well as one of her ankles,

2

her neck, and back. (ECF No. 44 at 2; *see also* ECF No. 29 at 2; ECF No. 33 at 4.) The parties point to nothing in the record showing the precise date of the injury, but it happened on or before March 10, 2016, which was Mark's last day of work with her employer, FedEx Office. (ECF No. 44 at 2.) Mark's job required her to stand for her entire shift, move and lift 55 pounds, and consistently bend and twist at the waist and the knees. (*Id.* at 2–3.) Her injury prevented her from performing these tasks and so she was placed on leave. (*Id.*)

On May 24, 2016, Mark applied for short-term disability benefits through the FedEx Office and Print Services, Inc. Short Term Disability Plan ("Plan"). (R. at 782.) The Plan applies where an injury prevents an employee "from performing the material and substantial duties of his or her regular occupation." (R. at 5.) But the Plan requires, among other things, that the alleged disability be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (R. at 6.)

Aetna, which administers the Plan for FedEx Office (R. at 4), decided on May 31, 2016 that Mark qualified for short-term disability payments from March 11 through May 26 of that year. (R. at 230–31.) The letter announcing the benefits award further stated, "If you need to stay out beyond May 26, 2016, send current medical information from your doctor to us for review." (R. at 230.) The parties do not describe what Mark did in reaction to this letter. However, Aetna soon sent another letter, dated June 8, 2016, announcing that it was "no longer approving" short-term disability benefits "starting on May 27, 2016." (R. at 245.) The letter stated that, on May 31, 2016 (the date Aetna initially approved benefits), Aetna had requested "[a]dditional medical

3

information supporting your claim . . . from Dr. Chang [who was regularly treating Mark for her injuries]," but the information received from Dr. Chang "provides a diagnosis only and fails to provide physical examination findings, diagnostic test results, or any evidence of your inability to perform the essential functions of your own occupation." (*Id.*) Thus, said Aetna, "It has been determined that there are insufficient clinical exam findings to support your [disability claim]." (*Id.*)

This letter provided instructions on how to appeal. (R. at 245–46.) Mark initiated a timely appeal on August 30, 2016. (R. at 312.) Aetna received numerous additional medical records from Mark and her treating providers, and affirmed its termination of benefits by letter dated November 16, 2016 ("Appeal Decision"). (R. at 391.) The Appeal Decision summarized the medical records, including the following:

- "PT [*i.e.*, physical therapy] reevaluation on 06/21/16 . . . [included] a functional report of antalgic gait and an impaired ability to ambulate long distances. On exam, you had significant left knee swelling; an increased, rigid arch in your right foot and multilevel thoracic mechanical dysfunction. Range of motion was 95 percent bilaterally in the knees. Strength was within functional limits with pain inhibition in the left quadriceps. Reflexes and sensation were intact."
- "PT reevaluation dated 07/20/16 advised of a functional report of antalgic gait and an impaired ability to ambulate long distances. On exam, you had significant left knee swelling; an increased rigid arch in your right foot and multilevel thoracic mechanical dysfunction. Range of motion was 95% bilaterally in the knees. Overall strength was improving. You had a tight hamstring, calf, right posterior tibialis and thoracolumbar

4

paravertebrals."

- "On 07/26/16, you reported having neck pain. On exam, you had limited cervical range of motion, however measured findings were not provided. You also had a stiff thoracic spine and upper trapezius tightness."

- "PT note dated 09/13/16 noted on exam, gait was slightly antalgic with forward head posture. Cervical and knee range of motion was limited with swelling above the left knee, however measured findings were not provided. Strength was improving overall. You had hypomobility [*i.e.*, less mobility than a healthy person would exhibit] at [spinal levels] T8-10 and T11-12; restriction at the thoracolumbar junction and stiffness at the bilateral hips, midfoot and cervicothoracic and L4-5 areas. You also had a tight hamstring, calf, right posterior tibialis and thoracolumbar paravertebrals."

- "On 10/03/16, you were assessed to be weaker on the left side however, the specific body part or measured findings were not provided."

(R. at 391–92.)

In explaining the choice not to continue benefits, the Appeal Decision asserted, t

> [N]o significant correlating exam findings were provided. There was no documentation of any diagnostic test results or significant measured deficits in range of motion or strength, knee instability, use of assistive devices or neurological deficits. . . .
>
> [Aetna has] determined there are no significant objective findings to substantiate that a functional impairment exists that would render you unable to perform your heavy job duties . . . effective 05/27/16.

(R. at 392.)

5

The Appeal Decision was the final step of Aetna's internal administrative process. (*Id.*) Mark, having exhausted her administrative remedies, filed this lawsuit on February 17, 2017. (ECF No. 1.) The Court referred the matter to Judge Watanabe for a recommended disposition. (ECF No. 42.) Very briefly, Judge Watanabe recommends that Aetna's decision be vacated and remanded for further development of the record because Aetna had a duty under the circumstances to seek out additional information regarding Mark's medical condition. (*Id.* at 13–14 (citing, among other things, *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807–08 (10th Cir. 2004), and *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)).)

### III. ERISA STANDARD OF REVIEW ON THE MERITS

"When an individual covered by [an ERISA-governed employee benefit] plan makes a claim for benefits, the [plan] administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; certain alterations incorporated). Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws. 29 U.S.C. § 1144(a).

Normally when the ERISA-governed plan at issue "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the plan administrator's denial of benefits is reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Plan delegates such discretionary authority to Aetna. (R. at 31–32.) The Court will therefore analyze Aetna's decision under the arbitrary and

6

capricious standard.

"When reviewing a plan administrator's decision to deny benefits, [the Court] consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious." *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009) (internal quotation marks omitted). The Court is further limited to reviewing the administrator's decision in light of the information before the administrator when it made its decision. *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) ("in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the 'administrative record'—the materials compiled by the administrator in the course of making his decision").

### IV. ANALYSIS

The Court expresses no opinion on Judge Watanabe's reasoning that Aetna had a duty, under the circumstances of this case, to further develop the medical record before deciding whether to discontinue Mark's short-term disability benefits. Upon *de novo* review and having reviewed all of the briefing both predating and postdating the Recommendation (*see* ECF Nos. 29, 33, 37, 45, 46), the Court is convinced by a separate argument, namely, that Aetna's decision to discontinue benefits was arbitrary and capricious under its stated rationale (*see* ECF No. 29 at 5–6, 22).

Aetna discontinued benefits because it believed there were "no significant objective findings to substantiate that a functional impairment exist[ed] that would render [Mark] unable to perform [her] heavy job duties." (R. at 392.) This refers to Plan language requiring "significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical,

7

physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (R. at 6.)

The Appeal Decision's rationale—lack of significant objective findings—is a *non sequitur* compared to the medical evidence it summarizes. As described in Part II, above, Aetna had before it evidence of (among other things): left knee swelling; reduced range of motion in the knees (95%); antalgic gait (*i.e.*, limping); increased, rigid arch in the right foot; "multilevel thoracic mechanical dysfunction"; "tight hamstring, calf, right posterior tibialis and thoracolumbar paravertebrals"; limited range of motion in the neck; and hypomobility at certain areas of the spine. (R. at 391–92.) All of these appear to be "anatomical[] [or] physiological . . . abnormalities which can be observed apart from the individual's symptoms." The Appeal Decision nowhere claims otherwise.

Aetna's response brief dismisses all of these medical observations as "'symptoms' that were expressly insufficient alone to meet the definition of disabled under the [P]lan." (ECF No. 33 at 13 (footnote omitted).) But the Appeal Decision does not characterize any of these observations as "symptoms." *See Scruggs*, 585 F.3d at 1362 ("When reviewing a plan administrator's decision to deny benefits, [the Court] consider[s] only the rationale asserted by the plan administrator in the administrative record . . . ." (internal quotation marks omitted)). Moreover, Aetna nowhere explains, in the Appeal Decision or otherwise, why these observations do not reveal "anatomical[] [or] physiological . . . abnormalities which can be observed apart from the individual's symptoms." (R. at 6.)

To the extent Aetna means to say that a claimant could fake these conditions, the argument still fails. Absent outlandish scenarios (*e.g.*, purposeful re-injury before an exam), conditions such as swelling and muscle tightness cannot be faked. Moreover,

8

the Plan does not define "significant objective findings" with respect to whether a claimant can fake a condition. The Plan says only that there must be evidence of abnormalities which can be observed apart from the claimant's symptoms. So even a condition that might be faked, such as a limp, may not be disregarded solely on that basis.

On three occasions the Appeal Decision refers to observations about limited range of motion but discounts these observations for lack of "measured findings." (R. at 392.) This appears to imply that Aetna cannot determine, without numerical measurements, whether an objective finding is a "*significant* objective finding[]" (emphasis added). But this only emphasizes a more systemic problem in the Appeal Decision. To properly discount the observations contained in the medical record, Aetna needs to conclude as to each observation that it is (1) not "objective," or (2) objective but not "significant." Again, Aetna nowhere declares any of the above-recited observations to be non-objective. The Court is forced to presume, then, that Aetna concluded the observations were not "significant"—but Aetna never says as much, with one exception. That exception is a supposed lack of "significant measured deficits and range of motion," apparently referring to the 95% range-of-motion measurement on two occasions. (*See* R. at 391–92.) Assuming for present purposes that 95% range of motion is not a "significant anatomical[] [or] physiological . . . abnormalit[y]" (R. at 6), the rest of the Appeal Decision comprises only an announcement, not an explanation. Aetna invokes the "significant objective findings" requirement and then says that none exist despite having just summarized a substantial record of objective observations, none of which are obviously insignificant.

Aetna also overlooks, or fails to see the probative value of, objective

observations found in three "functional movement screens" administered on Mark by a physical therapist. (*See* R. at 273–74, 278, 376.) These evaluations tested abilities such as "deep squat," "hurdle step," "inline lunge," "shoulder mobility," and similar gross motor functions. Each evaluation resulted in a numerical score. The Appeal Decision acknowledges that two of these functional movement screens took place (one on July 20, 2016, and another on September 26, 2016) resulting in scores of 14 and 11, respectively. (R. at 392 (referring to R. at 278 & 376).)[1] But that is the extent of the Appeal Decision's recognition of the functional movement screens. Notably, the Appeal Decision says nothing about the physical therapist's narrative description of Mark's performance during the September 26, 2016 evaluation. That narrative twice describes "loss of balance," and also states that Mark was "unable to touch [her] knee to [the] ground" in a lunging exercise. (R. at 376.) The Appeal Decision also says nothing about a third functional movement screen that took place on August 8, 2016. (R. at 273–74.) In that evaluation, the physical therapist's narrative notes "lack of balance," "extreme lack of balance," "lack of stability," and difficulty touching the knee to the ground during the lunge test. (R. at 274.)

In short, Aetna's final decision in Mark's case displays two instances of arbitrary and capricious analysis. First, Aetna summarized a substantial record of what appear to be objective findings and then announced that no "significant objective findings" existed, without explanation as to why the findings just summarized were neither objective nor significant. *Cf. Zuke v. Am. Airlines, Inc.*, 644 F. App'x 649, 654 (6th Cir. 2016) ("when a plan [decision] categorically states that there is no objective evidence

---

[1] The significance of these scores is not explained.

10

when in fact there is such evidence—favorable or not—the plan acts arbitrarily and capriciously").  Second, Aetna overlooked potentially important additional objective findings available in the record, namely, the functional movement screen narratives. *Lamont v. Connecticut Gen. Life Ins. Co.*, 215 F. Supp. 3d 1070, 1080 (D. Colo. 2016) ("in the substantial evidence analysis, the denominator (all available evidence) is as important as the numerator (the evidence relied upon to reach a decision)").[2]

For the first time in her reply brief, Mark argues that Aetna also behaved arbitrarily and capriciously because it approved Mark's benefits and then discontinued them, with no explanation of what had changed or why the medical records were sufficient for approval through May 26, 2016 but not afterward.  (ECF No. 37 at 13–14.) Arguments raised for the first time in a reply brief are normally forfeited.  *See, e.g.*, *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  However, because the Court would vacate and remand for the above-stated reasons regardless, the Court notes that "[t]otal failure to discuss prior benefits certainly raises the suspicion of an inadequately reasoned decision."  *Lamont*, 215 F. Supp. 3d at 1079.  In the present circumstance, Aetna's failure further emphasizes that its choice to discontinue Mark's benefits was arbitrary and capricious on the record before it and in light of the explanation it provided.  *Cf. id.* (noting, in the context of long-term disability, that termination of previously awarded benefits naturally raises questions such as, "What changed?  Has the claimant's functional capacity improved?  Or has the claimant's

---

[2] On appeal, Aetna at times emphasizes the observations in the medical record, noted in the Appeal Decision, that Mark's condition had been improving.  (*See, e.g.*, ECF No. 33 at 8, 13, 18.)  But the Appeal Decision does not say that the medical evidence shows Mark's condition improved to the point where she could resume her job.  The Appeal Decision rests entirely on the notion that Mark failed to submit significant objective findings.  That is the rationale this Court must review.  *See Scruggs*, 585 F.3d at 1362.

functional capacity always been better than previously believed, but the insurer failed to discover information suggesting as much until now?").

Judge Watanabe recommended vacatur and remand to Aetna for further consideration of the record and a new decision (ECF No. 44 at 14), in contrast to Mark's request for reversal and remand with directions to reinstate benefits (ECF No. 29 at 25). Mark filed no objection to this (or any) portion of the Recommendation, so the Court may review it "under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The Court reviews for clear error and finds none. Indeed, Judge Watanabe recommended the proper disposition under the circumstances: "if the plan administrator failed to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (internal quotation marks omitted).

On remand, "[Aetna] is directed to 'tak[e] new evidence should [Mark] wish to submit the same.'" *Id.* at 1176 (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 32 (1st Cir. 2005)). The parties may also address whether Mark now qualifies for long-term disability benefits—a matter passingly mentioned in the parties' briefs (*see* ECF No. 29 at 11 n.8; ECF No. 33 at 2 n.1), and about which the Court expresses no opinion.

## V. CONCLUSION

For the reasons set forth above the Court ORDERS as follows:

1. The Joint Motion for Determination (ECF No. 38) is GRANTED;

2. Judge Watanabe's Recommendation (ECF No. 44) is ADOPTED as modified herein;

3. Defendant's decision to terminate Plaintiff's short-term disability benefits effective May 27, 2016 is VACATED and this matter is REMANDED to Defendant for supplementation of the record (should Plaintiff choose to submit additional materials), further review of the record as developed on remand, and a new decision; and

4. The Clerk shall enter judgment in favor of Plaintiff and against Defendant, and shall terminate this case. Plaintiff shall have her costs upon compliance with D.C.COLO.LCivR 54.1. Should Plaintiff intend to seek attorneys' fees, she must do so within the time required, and according to the procedures established by, Federal Rule of Civil Procedure 54(d)(2) and D.C.COLO.LCivR 54.3.

Dated this 24th day of August, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge